IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL W. HARVEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No. 03-391-CJP[1] |
| **ASSISTANT WARDEN WEST,** | ) |
| **STEVE STILOHRI,** | ) |
| **CAPTAIN McCHANAHEY, and** | ) |
| **CHAPLIN KLIENS** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM and ORDER

Before the court is defendants' Motion for Summary Judgment. **(Doc. 50)**. The motion is supported by affidavits and exhibits. Defendants served upon the *pro se* plaintiff the notice required by ***Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 51)**. Plaintiff filed his own affidavit in response. **(Doc. 52)**.

Plaintiff Michael Harvey was formerly an inmate in the custody of the Illinois Department of Corrections. He brings suit under 42 U.S.C. §1983 for violation of his First Amendment right to practice his religion during his incarceration.

Mr. Harvey is Muslim. As construed on preliminary review, plaintiff alleges that, while he was incarcerated at Vandalia Correctional Center, he was not always allowed to attend Muslim services, Muslim services sometimes started late because the inmates were not taken to the chapel on time, and he was told that he could attend only one service a week. Plaintiff also

---

[1] On consent of the parties, this matter has been assigned to the undersigned for final disposition, pursuant to 28 U.S.C. § 636(c). See, Docs. 18, 53 and 54.

1

makes a general allegation that Muslim inmates are discriminated against, and claims that he was harassed and insulted when attempting to practice his religion.  Mr. Harvey was transferred from Vandalia sometime before July, 2004, and was released from the IDOC in February 2005.  **See, Docs. 5 and 16.**

### Grounds for Summary Judgment

Defendants argue that they accommodated plaintiff's practice of his religion insofar as practicable at Vandalia, and that any restrictions on his ability to practice were reasonably related to legitimate penological interests.  They deny that Muslims were treated differently from members of any other faith group.  They deny that they ever harassed or insulted plaintiff while he was practicing his faith.

### Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  **Fed.R.Civ.P. 56(c);  see** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).**  The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party.  **See,** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).**  Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial.  *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply

reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage.  Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,**475 U.S. 574, 586 (1986)**.  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, **477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996).**  Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment.  Disputes as to irrelevant or unnecessary facts do not preclude summary judgment.  *Clifton v. Schafer*, **969 F.2d 278, 281 (7th Cir. 1992).**

Plaintiff is *pro se*, and his pleadings must be liberally construed.  *Duncan v.Duckworth*, **644 F.2d 653, 655 (7th Cir.1981).**

### Analysis

The First Amendment to the Constitution of the United States protects the "free exercise" of religion.  This right is not completely lost upon conviction of a crime and incarceration.  "An inmate retains the right to exercise his religious beliefs in prison." *Kaufman v. McCaughtry*, **419 F.3d 678, 681 (7th Cir. 2005) (citing** *Tarpley v. Allen County*, **312 F.23d 895, 898 (7th Cir. 2002)).**

The free exercise inquiry asks whether government has placed a substantial

3

> burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.

***Hernandez v. C.I.R.* 490 U.S. 680, 699 (1989) (internal citations omitted).**

Although prisoners retain their First Amendment right to the free exercise of religion, prison officials may enforce policies and regulations which limit the exercise of religious practices. "To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." ***O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987)**. Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest. ***Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476 (2001)**; ***Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection." ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1429 (1981).** At the same time, prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution. ***See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).** "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate

penological interests outweigh the prisoner's religious interests. ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**. Whether other avenues remain available for the exercise of the asserted right is one of the key tests of "reasonableness." ***Turner*, 482 U.S. at 90.**

Applying the above principles to this case, it is clear that defendants are entitled to summary judgment.

Defendants' affidavits and exhibits establish that they attempted to accommodate plaintiff's practice of his religion while he was incarcerated a Vandalia.

Plaintiff testified in his deposition that his first complaint is that there was no resident Imam at Vandalia. **See, Doc. 50, Exhibit A, pp. 9-13.** Mr. Harvey testified that there was an Imam named Johnnie Shabbaz, who attended some services. **Exhibit A, p. 12.** Plaintiff testified that he was told that inmates could not hold services by themselves; there had to be an officer or chaplain present. **Ex. A, p. 9**. Sometimes the Protestant chaplain oversaw the service, which plaintiff stated was "part of the problem" because the chaplain did not understand Arabic or know the Koran. *Id.* Plaintiff also testified that he himself led prayer services. **Ex. A, p. 12.**

The affidavit of defendant Patricia West, assistant warden of programs, explains that Vandalia does not have a resident Imam, but, during the relevant time, was able to sometimes offer the services of an Imam named Johnnie Shabbaz. Mr. Shabbaz was sometimes unable to lead the services at VAndalia due to his advanced age or illness. Warden West states that the IDOC and Vandalia have experienced some difficulty in obtaining the services of Islamic Imams and volunteers to assist with Islamic study groups, particularly in southern Illinois, "which has limited the opportunity for these groups to meet with the required supervision." **Exhibit B, ¶4**. She states that "all reasonable efforts have been made to accommodate the religious needs of

5

Muslim inmates."  **Exhibit B, ¶2**.

The fact that the IDOC has been unable to procure the services of a "resident Imam" for Vandalia Correctional Center does not, without more, violate the constitution.

With regard to services starting late, defendant Edward McConaughay (incorrectly named in the complaint as "Captain McChanahey") has filed an affidavit in which he states that every effort is made to ensure that services begin on time, but that there have been a few occasions where Islamic services started late.  He explains that it is not possible to permit the service to run later than its scheduled time because the institution must adhere to the daily schedule to ensure the security of the facility and to ensure the provision of services.  **Exhibit C**.

Defendants have also filed a number of documents which reflect the scheduling of religious services and the special arrangements that were made for Muslim inmates to observe Ramadan, the Feast of Eid-Ul-Fitr, the Feast of Eid-Ul-Adha in 2002 and 2003.  **Exhibit E**. Plaintiff admitted in his deposition that special arrangements were made at Vandalia to accommodate the observation of Ramadan by Muslim inmates.  **Ex. A, p. 29**.  **Exhibit E** demonstrates that, in addition to the special arrangements that were made for Ramadan and the feasts, two Islamic services (Taleem and Jumah) were scheduled each week.  Mr. Harvey agreed in his deposition that Muslim services, i.e., Taleem and Jumah, were scheduled twice a week. Contraty to his complaint, he did not testify that he was only allowed to attend one service each week.  **Ex. A, p. 12-13.**

**Exhibit F** documents the fact that Plaintiff was on the lists for Jumah and Taleem services beginning on November 3, 2002.  Plaintiff was on the Ramadan lists as well.

Plaintiff's affidavit filed in response to the motion does not set forth any facts to

6

contradict the above evidence. Rather, he simply makes conclusory allegations that defendants acted with intent to deprive him of his rights and failed to exhaust all means possible to "obtain and secure the same religious requirements for the Muslims that were so readily available to other religious groups." Mr. Harvey offers no facts to back up this allegation. In his deposition, he testified that Christian groups held informal Bible study groups in the dorm rooms, but that the Muslims were not permitted to hold Taleem sessions in the chapel without supervision. **Ex. A, pp. 27-28.** Plaintiff is comparing two dissimilar situations. A prison has a strong interest in "having its guards observe prisoners at all times and in all situations." ***Canedy v. Boardman*, 91 F.3d 30, 34 (7th Cir. 1996)**. In the absence of evidence to show that other faith groups were permitted to gather in the chapel for formal religious services without supervision, plaintiff's deposition testimony does not demonstrate that Muslims were treated differently from other faith groups.

Plaintiff also testified about an incident in which he was written up by a guard (who is not a defendant here) for praying before "lights on" in the morning. However, Plaintiff complained to defendant West, who addressed the situation and instructed the officer that plaintiff could pray early in the morning if he did not make a disturbance. The ticket was expunged. **Ex. A, pp. 21-22**. Obviously, this incident does not support plaintiff's claim, as it demonstrates that Warden West acted to accommodate plaintiff's practice of his religion.

Lastly, plaintiff's complaint and the attachments thereto describe several incidents in which he claims he was harassed and insulted while practicing his religion. For example, he was reprimanded by an officer who is not a defendant here for greeting another Muslim inmate with an embrace at Lawrence Correctional Center. On another occasion, an officer named Hughes

came into the chapel at Lawrence and "disrupted" the services. Even assuming that such incidents amount to constitutional violations, since none of these incidents involved the defendants, defendants cannot be held liable for them. ***Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)**.

Defendant were not constitutionally required to permit Mr. Harvey to practice each and every tenet of his faith while he was incarcerated at Vandalia. ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**. A prison inmate must accept the reality that his constitutional rights, including the right to practice his religion, may be restricted by the fact of confinement and the needs of the penal institution. ***See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977)**. Defendants have demonstrated here that plaintiff was given adequate opportunities to practice his religion during his incarceration, and that restrictions on same were reasonably related to legitimate penological interests.

For the foregoing reasons, defendants' Motion for Summary Judgment **(Doc. 50)** is **GRANTED.**

Judgment shall be entered in favor of defendants Jon Kline (incorrectly sued as Chaplain Kleins), Edward McConaughay (incorrectly sued as Captain McChanahey), Stephen Sotiroff (incorrectly sued as Steve Shilohri), and Patricia West.

**IT IS SO ORDERED.**

**DATE:  March 13, 2007.**

                                              s/ Clifford J. Proud
                                              **CLIFFORD J. PROUD**
                                              **UNITED STATES MAGISTRATE JUDGE**